UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.

Crossroads Financial Group, LLC,

    Plaintiff,

v.

Christopher Prescott and Jason Prescott,

    Defendants.

_____/

## COMPLAINT

Plaintiff Crossroads Financial Group, LLC ("Crossroads") files its Complaint against Defendants Christopher Prescott ("Chris Prescott") and Jason Prescott ("Jason Prescott") (collectively, the "Defendants"), and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

**A.  Subject Matter Jurisdiction**

1. Crossroads is a North Carolina limited liability company.

2. The members of Crossroads are Lee Haskin and Charles Forbes. Mr. Haskin is a citizen of the state of Florida. Mr. Forbes is a citizen of the state of Connecticut.

3. Crossroads is the assignee of a Loan Agreement (defined below), which was assigned by Crossroads Financing, LLC ("Crossroads Financing").

4. Pursuant to a Servicing and Management Agreement, the Loan Agreement was serviced by Crossroads Financial, LLC.

5. Crossroads, Crossroads Financing, and Crossroads Financial, LLC will be collectively referenced to as the "Lender Entities."

6. Chris Prescott is a citizen of the State of Georgia and may be served at 1014

Tullamore Pl., Alpharetta, GA 30022

7. Jason Prescott is a citizen of the State of Georgia and may be served at 5890 Falling View Lane, Cumming, GA 30040.

8. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different States and the amount in controversy exceeds $75,000.

B. **Personal Jurisdiction**

9. The Defendants engaged in substantial and continuous contacts with Florida pertaining to the transactions at issue herein.

10. The Lender Entities' chief executive offices are located in Boca Raton, Florida.

11. The Defendants negotiated the below defined Loan Agreement, Guaranty Agreement, Subordination Agreement, and Guaranty of Validity with Crossroads Financing while Crossroads Financing and its representatives were located in Florida.

12. Home Décor Liquidators, LLC ("Home Décor") and the Defendants entered into the Loan Agreement with Crossroads Financing and transmitted the signed document to Crossroads Financing in Florida.

13. Home Décor entered into the below defined First Amendment with Crossroads Financing and transmitted the First Amendment to Crossroads Financing in Florida.

14. Jason Prescott entered into the Guaranty of Validity and transmitted the Guaranty of Validity to Crossroads Financing in Florida.

15. Chris Prescott entered into the Guaranty Agreement and transmitted the Guaranty Agreement to Crossroads Financing in Florida.

16. Chris Prescott entered into the Subordination Agreement and transmitted the

Subordination Agreement to Crossroads Financing in Florida.

17. Pursuant to the Loan Agreement, all notices were to be made to Crossroads Financing in Florida.

18. Home Décor representatives and the Defendants routinely and continuously contacted the Lender Entities through emails and telephone communications with the Lender Entities' representatives who were located in Florida.

19. Defendants knew that they were communicating with the Lender Entities' representatives in Florida.

20. The Lender Entities' representatives routinely and continuously contacted Home Décor and the Defendants from Florida.

21. Defendants made material misrepresentations, as further set forth below, to the Lender Entities in Florida.

22. Pursuant to the Loan Agreement, Home Décor agreed to jurisdiction and venue in the city in which the Lender's chief executive office is located and agreed to submit to such jurisdiction.

23. Pursuant to the Subordination Agreement, Chris Prescott agreed that the city in which Crossroads Financing's chief executive office is located is an acceptable venue and jurisdiction. Chris Prescott agreed to waive any right to oppose bringing an action in the city that Crossroads Financing's chief executive office is located.

24. The Lender Entities' chief executive offices are located in Florida.

25. Advances were made to Home Décor from the Lender Entities' offices in Florida.

26. Home Décor was required to make payments to Crossroads in Florida.

27. In addition to breaching the Agreements in Florida, Defendants made material

misrepresentations to the Lender Entities at their chief executive offices located in Florida.

28. The Court has personal jurisdiction over the Defendants.

**C. Venue**

29. Venue is proper in this action pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims occurred in this district.

## FACTUAL BACKGROUND

**A. Home Décor's Loan with Crossroads Financing**

30. Chris Prescott is the President of Home Décor.

31. Jason Prescott is the Vice President of Sales of Home Décor.

32. Home Décor is engaged in the business of selling furniture at six different stores located in Missouri, Mississippi, South Carolina, and Virginia.

33. On or about October 16, 2019, Crossroads Financing provided a loan to Home Décor that permitted advances in an amount of up to $2,000,000 (the "Loan") so long as Home Décor's total Obligations[1] arising under the Loan did not exceed the Loan's Allowable Amount.

34. The purpose of the Loan was to enable Home Décor to fund its ongoing business and capital expenses.

35. The Loan is evidenced by a Loan and Security Agreement dated as of October 16, 2019 by and between Crossroads Financing and Home Décor ("Loan Agreement").[2]

36. The Loan Agreement was subsequently amended pursuant to a First Amendment to Loan and Security Agreement dated February 26, 2020 to increase the maximum amount of

---

[1] Capitalized terms defined herein shall have the meaning ascribed to them in that certain Loan and Security Agreement dated October 16, 2019 by and between Home Décor and Crossroads Financing.

[2] A true and correct copy of the Loan Agreement is attached hereto as Exhibit 1.

permitted advances to $2,500,000 (the "First Amendment").[3]

37.  As evidence of, and security for, the Loan, Home Décor executed and delivered to Crossroads Financing various instruments and agreements (collectively, the "Loan Documents").

38.  The Loan Documents included a Guaranty of Validity dated as of October 16, 2019 by and between Jason Prescott, Home Décor, and Crossroads Financing whereby Jason Prescott guaranteed the validity of reports and other financial information provided to Crossroads Financing in connection with the Loan (the "Guaranty of Validity").[4]

39.  The Loan Documents included a Guaranty Agreement by Individual dated as of October 16, 2019 (the "Guaranty Agreement") by which Chris Prescott guaranteed payment of all amounts owed by Home Décor to Crossroads Financing under the Loan Documents.[5]

40.  Crossroads purchased and acquired Crossroads Financing's right, title, and interest in the Loan and the Loan Documents pursuant to an Assignment Agreement dated October 16, 2019 (the "Assignment").  Pursuant to the Assignment, Crossroads now owns, holds and is entitled to enforce the Loan Agreement, the Guaranty, and the Guarantee of Validity.[6]

**B.    Home Décor's Defaults Under the Loan Documents**

41.  Home Décor has breached the terms of the Loan Documents by, among other things:

(a)  failing to maintain its merchant processing relationship in violation of section 10.1.2 of the Loan Agreement;

(b)  failing to remit proceeds of Collateral pursuant to instructions provided by

---

[3] A true and correct copy of the First Amendment is attached hereto as Exhibit 2.

[4] A true and correct copy of the Guaranty of Validity is attached hereto as Exhibit 3.

[5] A true and correct copy of the Guaranty is attached hereto as Exhibit 4.

[6] A true and correct copy of the Assignment is attached hereto as Exhibit 5.

Crossroads from time to time in violation of Sections 10.1.2 and 12.15 of the Loan Agreement;

(c) failing to maintain insurance as required by Section 10.1.10 of the Loan Agreement;

(d) failing to remit forty-four percent (44%) of its proceeds from the sale of its inventory to pay down the indebtedness owing under the Loan, as required by the Loan Agreement prior to any defaults;

(e) failing to make payment due within two business days from the date such payment was due in violation of Section 12.1 of the Loan Agreement;

(f) obtaining an Order of Relief in violation of Section 12.9 of the Loan Agreement;

(g) there being a Material Adverse Effect existing and continuing in violation of Section 12.10 of the Loan Agreement.

42. Furthermore, in connection with its obligations under the Loan Agreement, Home Décor regularly provided Crossroads with borrowing base certificates (collectively, the "Borrowing Base Certificates"),[7] whose accuracy was attested to by Chris Prescott and Jason Prescott.

43. Pursuant to the Loan Agreement:

> 2.2.1 <u>Borrowing Base Certificate</u>. Each request from Borrowers for a Credit Accommodation, but no less than once per week, shall be accompanied by a Borrowing Base Certificate, completed and signed by Borrowers. Such Borrowing Base Certificate may be in either electronic or hard copy form, as acceptable to Lender. **The Borrowing Base Certificate shall at all times be a bona fide and accurate representation of the Collateral and Advances and comply with the representations and warranties herein.**

(Ex. 1) (emphasis added).

44. Pursuant to the Guaranty of Validity, Jason Prescott covenanted and guaranteed:

1. That I have reviewed and, so long as I am the Vice President of Sales of the

---

[7] A true and correct copy of a representative Borrowing Base Certificate signed and submitted by the Defendants to Crossroads Financing is attached hereto as Exhibit 6.

>   Borrower, will in the future be reviewing all Borrowing Base Certificates and ancillary supporting documents, as well as all financial statements which are being provided to you by the Borrower pursuant to the terms of the Loan Agreement (collectively the "Reports" and individually a "Report").
>
>   2. Based upon my knowledge, the Reports and any other financial information included or incorporated by reference in each Report, fairly present in all material respects the financial condition, results of operations and cash flows of the Borrower as of, and for, the periods presented in the Reports.
>
>   3. By the Borrower submitting any Reports to you in the future that are reviewed by me, I reaffirm my statements herein for all such Reports.
>
>   4. I understand that you will be relying on this Guaranty and Validity and the statements contained herein and reaffirmed as provided above in making loans and advances to the Borrower.

(Ex. 3).

45. Home Décor, through Chris Prescott and Jason Prescott, made many material and significant false representations to the Lender Entities regarding the current and historical financial status of Home Décor through the Borrowing Base Certificates.

46. Specifically, Home Décor, through Chris Prescott and Jason Prescott, repeatedly overstated and misrepresented its financial condition in the Borrowing Base Certificates by, among other things, including as inventory, in transit inventory which had been ordered but was not yet in transit from the supplier to Home Décor and therefore was ineligible to be included in the Borrowing Base Certificates.

47. The inventory levels represented in the Borrowing Base Certificates were inflated by Defendants in order for Home Décor to obtain further advances under the Loan.

48. The misrepresentations were material to Crossroads in continuing to extend credit to Home Décor through the revolving line of credit under the Loan.

49. The Defendants executed the Borrowing Base Certificates and were the people primarily responsible at Home Décor for the certification of the Borrowing Base Certificates.

50. Chris Prescott and Jason Prescott knew that the representations contained within the Borrowing Base Certificates concerning the amount of inventory were overstated and that the representations were, in fact, false misrepresentations when made.

51. Crossroads relied on the misrepresentations and was injured as a result.

52. Home Décor has breached the terms of the Loan Documents by, among other things, making the misrepresentations within the Borrowing Base Certificates in violation of Sections 2.2.1 and 12.6 of the Loan Agreement.

53. On or about February 3, 2022, Crossroads sent a letter to Home Décor notifying it of certain Events of Default under the Loan Agreement and accelerating the indebtedness owing under the Loan.[8]

54. On or about February 3, 2022, Crossroads also sent a letter to Chris Prescott notifying him of certain Events of Default under the Loan Agreement and demanding that Chris Prescott pay the Obligations owing from Home Décor to Crossroads.[9]

55. Home Décor filed a petition for relief under Chapter 11 of the Bankruptcy Code on February 15, 2022 (the "Petition Date") in the United States Bankruptcy Court for the Northern District of Georgia styled *In re: Home Décor Liquidators, LLC,* Case No. 22-51278-bem (the "Bankruptcy Case").

56. Chris Prescott remains President of Home Décor during the pendency of the Bankruptcy Case.

57. Jason Prescott remains Vice President of Sales of Home Décor during the pendency of the Bankruptcy Case.

---

[8] A true and correct copy of Crossroads' February 3, 2022 letter to Home Décor is attached hereto as Exhibit 7.

[9] A true and correct copy of Crossroads' February 3, 2022 letter to Chris Prescott is attached hereto as Exhibit 8.

58. As of February 15, 2022, the principal, interest, and cost (excluding reasonable attorneys' fees for the purpose of the below calculation only) due and owing by Home Décor under the Loan Agreement exceeded $1.6 million.

## COUNT 1 – BREACH OF THE GUARANTY AGREEMENT
(Chris Prescott)

59. Crossroads repeats and realleges the above Factual Background.

60. Crossroads Financing performed any and all obligations required of it under the Loan Agreement and the Guaranty Agreement.

61. Home Décor defaulted under the Loan Agreement and has not repaid the Loan.

62. Home Décor is indebted to Crossroads in the principal amount of at least $1.4 million.

63. Home Décor is indebted to Crossroads for interest that has accrued under the Loan Agreement, which amount, as of February 15, 2022, totaled in excess of $85,000.00.

64. Home Décor is indebted to Crossroads for certain fees arising under the Loan Agreement, which amount, as of February 15, 2022, totaled in excess of $85,844.97.

65. Pursuant to the Loan Agreement, Home Décor is indebted to Crossroads for certain attorneys' fees that it has incurred in connection with its collection of the Obligations, which are in excess of $60,000.00.

66. Interest continues to accrue at the per diem rate on the principal amount of the indebtedness owed under the Loan Agreement from February 16, 2022 through the date of Judgment.

67. Crossroads is entitled to recover from Home Décor additional fees that may be incurred under the Loan Agreement in the future.

68. Pursuant to the Guaranty Agreement, Chris Prescott personally and unconditionally

guaranteed the full and prompt payment of any and all indebtedness incurred by Home Décor to Crossroads Financing, including all amounts owed by Home Décor under the Loan Agreement.

69. Chris Prescott has failed to pay the Lender Entities these amounts.

70. Chris Prescott also agreed that all information provided would be accurate.

71. To induce Crossroads Financing to continue providing financing to the Defendants under the Loan Agreement, through false pretenses, false representations, and/or actual fraud, intentionally misrepresented material facts regarding Home Décor's financial condition within the Reports.

72. Defendants misrepresented material facts regarding Home Décor's financial condition within the Reports with malice and with the intent to deceive the Lender Entities.

73. Chris Prescott has breached the express terms of the Guaranty by failing to pay Home Décor's obligations and by providing false information to the Lender Entities and is liable to Crossroads for all remaining amounts owed by Home Décor under the Loan Agreement.

74. As a direct result of Chris Prescott's breach of the Guaranty Agreement, Crossroads has suffered damages.

## COUNT 2 - BREACH OF THE GUARANTY OF VALIDITY
(Jason Prescott)

75. Crossroads repeats and realleges the above Factual Background.

76. Pursuant to the Loan Agreement, Home Décor was required to submit the Borrowing Base Certificates in order to receive advances under the Loan.

77. Pursuant to the Guaranty of Validity, which incorporated itself into the Loan Agreement, Jason Prescott acknowledged that he would be reviewing the Borrowing Base Certificates, ancillary supporting documents, as well as financial statements.

78. Jason Prescott covenanted and guaranteed that the information provided at the time

of the Loan Agreement and thereafter fairly represented the financial condition of Home Décor.

79. To induce the Lender Entities to continue providing financing to the Home Décor under the Loan Agreement, through false pretenses, false representations, and/or actual fraud, Jason Prescott intentionally misrepresented material facts regarding Home Décor's financial condition within the Reports.

80. The misrepresentations were false and related to material facts.

81. Jason Prescott knew that the representations were false at the time they were made.

82. Jason Prescott misrepresented material facts regarding Home Décor's financial condition within the Reports with the intent to deceive Crossroads Financial.

83. The Lender Entities reasonably and justifiably relied, to their detriment, upon the false information made by Defendants within the Reports.

84. Jason Prescott's provision of false Reports is a breach of the Guaranty of Validity.

85. As a direct and proximate cause of Jason Prescott's false representations that were knowingly and intentionally made or caused to be made by Home Décor and the Defendants, Crossroads has been damaged.

### COUNT 3 - INDEMNIFICATION
(Chris Prescott and Jason Prescott)

86. Crossroads repeats and realleges the above Factual Background.

87. In addition to their agreement under the Loan Agreement and Guaranty of Validity, with each Borrowing Base Certificate, the Defendants agreed as follows:

> Each of the undersigned jointly and severally warrant and covenant that: (a) **the information contained herein is true and correct**; (b) he or she has no knowledge of any fraud or suspected fraud affecting Borrower; and (c) **he or she will indemnify Lender** from any losses, direct, indirect or consequential, which result from a breach of the foregoing statements or any misstatements or any misstatement, fraud or criminal act on the part of any officer, employee or agent of the Borrower, including reasonable attorney's fees and expenses.

(Ex. 6) (emphasis added).

88. As further addressed above, the information provided in the Borrowing Base Certificates was not true and correct.

89. As further indicated above, Chris Prescott and Jason Prescott had knowledge of fraud or a suspected fraud affecting the borrower.

90. As a result of their separate agreement under the Borrowing Base Certificates, Chris Prescott and Jason Prescott are required to indemnify Crossroads from any losses resulting from a breach.

91. Chris Prescott and Jason Prescott signed and transmitted the Borrowing Base Certificates.

92. The terms and covenants of the Borrowing Base Certificates were breached.

93. As a result of the breaches of the Borrowing Base Certificates, Crossroads has been damaged.

WHEREFORE, Plaintiff Crossroads Financial Group, LLC respectfully demands:

1. A judgment against Chris Prescott and in favor of Crossroads on Count 1 of this Complaint for the full amount owed to Crossroads under the Loan Agreement and Guaranty Agreement;

2. a judgment against Jason Prescott and in favor of Crossroads on Count 2 of this Complaint for all damages incurred by Crossroads under the Loan Agreement and Guaranty of Validity;

3. a Judgment against Chris Prescott and Jason Prescott and in favor of Crossroads on Count 3 of this Complaint for all losses, direct, indirect or consequential, which resulted from a breach of the statements or any misstatement, fraud or criminal act;

4. prejudgment interest;

5. costs of this action, including applicable attorney's fees, and costs of court; and

6. such other and further relief as the Court deems just and proper.

Dated: June 13, 2022                    Respectfully submitted,

_____
ERIC LEE (Bar No. 961299)
lee@leeamlaw.com
Lee & Amtzis, P.L.
5550 Glades Road, Suite 401
Boca Raton, FL  33431
Telephone:  (561) 981-9988
**Attorneys for Plaintiff**
**Crossroads Financial Group, LLC**