# GUARANTY AGREEMENT BY INDIVIDUAL
## NOTICE: THIS DOCUMENT CONTAINS A WAIVER OF TRIAL BY JURY AND AN ARBITRATION PROVISION

This GUARANTY AGREEMENT, dated as of October 16, 2019 is made by Christopher Ivan Prescott an individual ("Guarantor"), in favor of Crossroads Financing, LLC, a Connecticut limited liability company ("Guaranteed Party"), to induce Guaranteed Party to extend or to continue to extend financial accommodations to Debtor (as hereinafter defined).

1. **DEFINITIONS**. As used herein:

    1.1. "Acceptable Forums" – Has the meaning set forth in Section 19.

    1.2. "Agreement" – Means this Guaranty Agreement and all permitted amendments hereto or renewals hereof.

    1.3. "Bankruptcy Code" – Means Title 11 of the United States Code.

    1.4. "Collateral" – Means all existing and future assets and properties of Debtor upon or in which Guaranteed Party is granted or holds a security interest or lien pursuant to or in connection with the Credit Documents.

    1.5. "Chosen State" – New York.

    1.6. "Credit Documents" - Means that certain Loan and Security Agreement dated as of even date herewith, with Debtor, and all documents executed in connection therewith, and all permitted amendments or renewals to or of any of the foregoing.

    1.7. "Debtor" – Means Home Décor Liquidators, LLC, and all successors-in-interest of such Person by operation of law or otherwise, including any Trustee (as defined in the Bankruptcy Code), and any successor-in-interest arising out of any merger or reorganization involving such Person, whether such Person is the surviving or disappearing Person.

    1.8. "Default" – Means any event of default under any Credit Document, including any event or occurrence that, with the giving of notice or the lapse of time, would constitute such an event of default.

    1.9. "Guaranteed Obligations" – Means all obligations, indebtedness, and liabilities of Debtor of every kind and character owed to Guaranteed Party, including, but not limited to, those arising directly or indirectly out of or in connection with the Credit Documents, including such obligations, indebtedness, and liabilities arising under successive transactions renewing, increasing, extending, or continuing any of the foregoing, changing the interest rate or other terms thereof, or creating new or additional obligations, indebtedness, and liabilities after prior obligations, indebtedness, or liabilities have been in whole or in part satisfied, and further including all such obligations, indebtedness, and liabilities however arising, whether for principal, interest (including interest that, but for the filing of a petition under the Bankruptcy Code with respect to Debtor, would have accrued on any such obligations, indebtedness, or liabilities), letter of credit

reimbursement obligations, fees, costs, expenses, premiums, charges, attorneys' fees, or indemnity obligations, whether heretofore, now, or hereafter made, incurred, or created, whether voluntarily or involuntarily, whether secured or unsecured (and if secured, regardless of the nature or extent of the security), whether or not now due, whether absolute or contingent, whether liquidated or unliquidated, whether determined or undetermined, whether Debtor may be liable individually or jointly with others, and whether made, incurred, or created before or after any entry of an order for relief with respect to Debtor in a case under the Bankruptcy Code.

1.10. "Guaranteed Party" – Has the meaning set forth in the introduction hereto.

1.11. "Guarantor" – Has the meaning set forth in the introduction hereto.

1.12. "Party" – Guaranteed Party and/or Guarantor.

1.13. "Person" – Means an individual or entity.

## 2. GUARANTY BY GUARANTOR.

2.1. Promise to Pay and Perform.

2.1.1. Guarantor unconditionally and irrevocably guarantees to Guaranteed Party the prompt payment and performance of the Guaranteed Obligations, and agrees to pay same on demand, without regard to any reduction in the amount thereof in any insolvency proceeding of the Debtor, whether or not the Guaranteed Obligations are found to be invalid, illegal or unenforceable, this being a guaranty of payment and not a guaranty of collection.

2.1.2. Notwithstanding anything to the contrary contained in this Agreement, the Guaranteed Party agrees that, so long as Guarantor continues to cooperate with and assist Guaranteed Party in connection with any action or effort by or on behalf of Guaranteed Party to liquidate, dispose of or foreclose the Collateral as a result of Default under the Credit Documents, Guaranteed Party shall not make demand under this Guaranty until the earlier of (a) the date of the commencement of any proceeding under the United States Bankruptcy Code against Debtor or Guarantor, (b) the liquidation, disposition or foreclosure of substantially all the inventory Collateral following a Default under the Credit Documents and (c) the number of Liquidation Days (as defined below) following the initial exercise by or on behalf of Guaranteed Party of rights or remedies against any portion of the inventory Collateral as a result of a Default under the Credit Documents. The term "Liquidation Days" means the number of days that, pursuant to the most recent acceptable appraisal of inventory Collateral received by Guaranteed Party under the Creditor Documents, are estimated to realize upon substantially all the saleable inventory Collateral in an orderly liquidation thereof provided that in no event shall the Liquidation Days exceed 90- days from initial date of liquidation.

5508877.2
5508877.3

2.2. **Continuing Guaranty**. This Agreement is a continuing guaranty and shall remain in full force and effect notwithstanding the fact that, at any particular time, no Guaranteed Obligations may be outstanding.

2.3. **Cumulative Obligations**. The obligations hereunder are in addition to any other obligations of Guarantor under any other guaranties of the indebtedness or other obligations of Debtor or any other person at any time given to Guaranteed Party. This Agreement shall not affect or invalidate any such other guaranties.

2.4. **Joint and Several Obligation; Independent Obligation**. Guarantor is directly, jointly, and severally with all other guarantors of the Guaranteed Obligations liable to Guaranteed Party. The obligations of Guarantor hereunder are direct and primary and are independent of the obligations of Debtor or any other such guarantor, and a separate action may be brought against Guarantor irrespective of whether an action is brought against Debtor or any other guarantor or whether Debtor or any such other guarantor is joined in such action. Guarantor's liability hereunder shall not be contingent upon the exercise or enforcement by Guaranteed Party of any remedies it may have against Debtor or any other guarantor or the enforcement of any lien or realization upon any security Guaranteed Party may at any time possess. Any release that may be given by Guaranteed Party to Debtor or any other guarantor shall not release Guarantor.

3. **PAYMENTS**.

3.1. **Nature and Application of Payments**. Guarantor shall make all payments hereunder in immediately available lawful money of the United States, without deduction or withholding (whether for taxes (whether income, excise, or otherwise) or offset). Without regard to the form in which received, Guaranteed Party may apply any payment with respect to the Guaranteed Obligations or any other amounts due hereunder in such order as Guaranteed Party shall in its sole and absolute discretion determine, irrespective of any contrary instructions received from any other Person.

3.2. **Indefeasible Payment; Revival**. If any portion of any payment to Guaranteed Party is set aside and repaid by Guaranteed Party for any reason after being made by Guarantor, the amount so set aside shall be revived as a Guaranteed Obligation and Guarantor shall be liable for the full amount Guaranteed Party is required to repay plus all costs and expenses (including attorneys' fees, costs, and expenses) incurred by Guaranteed Party in connection therewith. All such legal fees shall be based upon the usual and customary rates for services actually rendered and not upon any fixed percentage of the outstanding balance hereunder.

3.3. **ACH Authorization**. In order to satisfy any of the Guaranteed Obligations, Guarantor authorizes Guaranteed Party to initiate electronic debit or credit entries through the ACH system to any deposit account maintained by Guarantor.

4. **CERTAIN REPRESENTATIONS AND WARRANTIES OF GUARANTOR**.
Guarantor represents and warrants as follows (which representations and warranties shall be true, correct, and complete at all times):

4.1. <u>Binding Effect</u>. This Agreement constitutes the legal, valid, and binding obligation of Guarantor, enforceable against Guarantor in accordance with its terms, except as enforceability may be limited by applicable bankruptcy, insolvency, or similar laws affecting the enforcement of creditors' rights generally or by equitable principles relating to enforceability.

4.2. <u>Changes Affecting the Guaranteed Obligations</u>. Guarantor has taken and is taking all steps in Guarantor's opinion necessary or appropriate to be informed on a continuing basis of changes or potential changes affecting the Guaranteed Obligations.

4.3. <u>Reliance by Guarantor; Financial Condition of Debtor</u>. This Agreement is not made by Guarantor in reliance on any representation or warranty, express or implied, by Guaranteed Party concerning the financial condition of Debtor, the nature, value, or extent of any security for the Guaranteed Obligations, or any other matter, and no promises have been made to Guarantor by any Person, including, without limitation, Guaranteed Party, to induce Guarantor to enter into this Agreement. Guarantor is presently informed of the financial condition of Debtor and of all other circumstances that a diligent inquiry would reveal and which bear upon the risk of nonpayment of the Guaranteed Obligations.

4.4. <u>Accuracy and Completeness of Supplied Information; Full Disclosure</u>. All information herein is, and all information hereafter supplied to Guaranteed Party by or on behalf of Guarantor in connection herewith will be, accurate and complete in all material respects. None of the representations or warranties made by Guarantor herein as of the date such representations and warranties are made or deemed made, and none of the statements contained in each exhibit, report, statement, or certificate furnished by or on behalf of Guarantor in connection with any of the Credit Documents, contains any untrue statement of a material fact or omits any material fact required to be stated therein or necessary to make the statements made therein, in light of the circumstances under which they are made, not misleading as of the time when made or delivered.

4.5. <u>Adequate Consideration</u>. The consideration given or provided, or to be given or provided, by Guaranteed Party in connection with this Agreement is adequate and satisfactory in all respects, and represents reasonably equivalent value, to support this Agreement and Guarantor's obligations hereunder.

4.6. <u>Transfer of Assets</u>. So long as this Agreement is in effect, Guarantor will not, without Guaranteed Party's prior written consent, transfer, sell or assign any of its assets or otherwise defease itself of any of its assets greater than $150,000.

5. **FINANCIAL CONDITION OF DEBTOR.** Guarantor shall keep informed of Debtor's financial condition, the status of any guarantors or of any security for the Guaranteed Obligations, and all other circumstances that bear upon the risk of nonpayment of the Guaranteed Obligations.

6. **CERTAIN ACKNOWLEDGEMENTS AND AGREEMENTS OF GUARANTOR.**

6.1. <u>Modifications to Credit Documents and Guaranteed Obligations</u>. Guarantor acknowledges and agrees that, without notice to Guarantor and without affecting or impairing the obligations of Guarantor hereunder, Guaranteed Party may, by action or inaction, compromise or

settle, extend the period of duration or the time for the payment, or discharge the performance of, or may refuse to, or otherwise not enforce, or may, by action or inaction, release all or any one or more parties to, any one or more of the Credit Documents or otherwise with respect to the Guaranteed Obligations or may grant other indulgences to Debtor in respect thereof, or may amend or modify in any manner and at any time (or from time to time) any one or more of the Credit Documents or otherwise with respect to the Guaranteed Obligations, or may, by action or inaction, release or substitute any guarantor, if any, of the Guaranteed Obligations, or may enforce, exchange, release, or waive, by action or inaction, any security for the Guaranteed Obligations or any guaranty of the Guaranteed Obligations, or any portion thereof.

6.2. <u>Subordination</u>. As defined in a separate agreement called "Subordination Agreement" dated October 16, 2019

6.3. <u>Commercially Reasonable Disposition of Collateral</u>. Guarantor acknowledges and agrees that if Guaranteed Party shall, pursuant to the rights granted to Guaranteed Party, under the terms of the Credit Documents or applicable law, dispose of any or all of the Collateral after the occurrence of a Default, such disposition shall be deemed commercially reasonable if, in the written opinion of three (3) commercial loan officers with three (3) or more years of workout experience each, the manner of the disposition is not inconsistent with the manner in which such commercial loan officers would have handled the disposition.

6.4. <u>Equal Credit Opportunity Act</u>. Guarantor:

6.4.1. Acknowledges that it is not an "applicant" as defined in the Equal Credit Opportunity Act, 15 U.S.C § 1691 et seq. ("ECOA");

6.4.2. Acknowledges that this agreement has been executed to provide further credit support for the Guaranteed Obligations; and

6.4.3. Waives any claim or defense it may have:

6.4.3.1. Under ECOA or

6.4.3.2. Related to the validity, legality or enforceability in whole or in part of the Guaranteed Obligations as a result of any violation of ECOA.

7. **NOTICE**.

7.1. All notices shall be effective upon: (a) the sending of an email to one of the email addresses below or (b) delivery to a recognized overnight delivery service of a properly addressed notice, delivery prepaid, with instructions to make delivery on the next business day. For purposes hereof, the addresses of the Parties are as set forth below or as may otherwise be specified from time to time in a writing sent by one Party to the other in accordance with the provisions hereof:

**Guarantor**

| | |
|---|---|
| Address: | 1014 Tullamore Pl<br>Alpharetta, GA 30022 |
| Phone Number: | 404-229-9663 |
| Email address: | cphdl@aol.com |

**Guaranteed Party**

**Crossroads Financing, LLC, a Connecticut limited liability company**

| | |
|---|---|
| Address: | Crossroads Financing, LLC<br>6001 Broken Sound Parkway, Suite 620<br>Boca Raton, FL 33487 |
| Officer: | Lee Haskin |
| Email: | lhaskin@crossroadsfinancial.com |

With copy to:

| | |
|---|---|
| | Crossroads Financial, LLC, as servicing agent for Crossroads Financing, LLC<br>6001 Broken Sound Parkway NW, Suite 620<br>Boca Raton, FL 33487 |
| Phone Number: | 561-988-7098 |
| Fax Number: | 561-994-5558 |

8. **AMENDMENTS, WAIVERS AND CONSENTS**. Neither this Agreement nor any provisions hereof may be changed, waived, discharged, or terminated, nor may any consent to the departure from the terms hereof be given, orally (even if supported by new consideration), but only by an instrument in writing signed by all Parties to this Agreement. Any waiver or consent so given shall be effective only in the specific instance and for the specific purpose for which given.

9. **ATTORNEY'S FEES**.

9.1. In the event that either Party finds it necessary to retain counsel in connection with any contract claim regarding the interpretation, defense, or enforcement of this Agreement, the prevailing party shall recover its reasonable attorney's fees and expenses from the unsuccessful Party.

9.2. It shall be presumed (subject to rebuttal only by the introduction of competent evidence to the contrary) that the amount recoverable is the amount billed to the prevailing party

by its counsel and that such amount will be reasonable if based on the billing rates charged to the prevailing party by its counsel in similar matters.

9.3. In the event that Guarantor asserts a claim against Guaranteed Party hereunder, it shall do so in writing prior to and as a condition of the commencement of any litigation by Guarantor, setting forth the specific amount of Guarantor's claim against Guaranteed Party (the "Damage Claim"). In the event that any litigation results in a judgment against Guaranteed Party of less the Damage Claim, the court must find that Guaranteed Party was the prevailing party for the purposes of Section 9.1.

9.4. In the event that either Party finds it necessary to retain counsel in connection with any non-contractual claim against the other Party (such as a tort claim), Guarantor shall pay the reasonable attorney's fees incurred by Guaranteed Party in connection therewith.

10. **NO WAIVER; CUMULATIVE NATURE OF REMEDIES**. No failure to exercise and no delay in exercising any right, power, or remedy hereunder shall impair any right, power, or remedy which Guaranteed Party may have, nor shall any such delay be construed to be a waiver of any of such rights, powers, or remedies, or any acquiescence in any breach or default hereunder; nor shall any waiver by Guaranteed Party of any breach or default by Guarantor hereunder be deemed a waiver of any default or breach subsequently occurring. All rights and remedies granted to Guaranteed Party hereunder shall remain in full force and effect notwithstanding any single or partial exercise of, or any discontinuance of action begun to enforce, any such right or remedy. The rights and remedies specified herein are cumulative and not exclusive of each other or of any rights or remedies which Guaranteed Party would otherwise have. Any waiver, permit, consent, or approval by Guaranteed Party of any breach or default hereunder must be in writing and shall be effective only to the extent set forth in such writing and only as to that specific instance.

11. **COSTS AND EXPENSES**. Guarantor agrees to reimburse Guaranteed Party on demand for:

11.1. The actual costs, including photocopying (which, if performed by Guaranteed Party's employees, shall be at the rate of $.10/page), travel, and attorneys' fees and expenses incurred in complying with any subpoena or other legal process attendant to any litigation in which Guarantor is a party;

11.2. The actual amount of all costs and expenses, including attorneys' fees, which Guaranteed Party may incur in enforcing this Agreement and any documents prepared in connection herewith, or in connection with any federal or state insolvency proceeding commenced by or against Guarantor, including those (i) arising out the automatic stay, (ii) seeking dismissal or conversion of the bankruptcy proceeding, or (ii) opposing confirmation of Guarantor's plan thereunder.

12. **SUCCESSORS AND ASSIGNS**.

5508877.2
5508877.3

12.1. This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective successors and assigns.

12.2. Guaranteed Party may assign its rights and delegate its duties hereunder in connection with an assignment of the Guaranteed Obligations. Upon such assignment, Guarantor shall be deemed to have attorned to such assignee and shall owe the same obligations to such assignee and shall accept performance hereunder by such assignee as if such assignee were Guaranteed Party.

13. **AMBIGUITIES**. This Agreement and all agreements relating to the subject matter hereof is the product of negotiation and preparation by and among each Party and its respective attorneys, and shall be construed accordingly.

14. **SEVERABILITY**. In the event any one or more of the provisions contained in this Agreement is held to be invalid, illegal, or unenforceable in any respect, then such provision shall be ineffective only to the extent of such prohibition or invalidity, and the validity, legality, and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

15. **ENTIRE AGREEMENT**. This Agreement supersedes all other agreements and understandings between the Parties hereto, verbal or written, express or implied, relating to the subject matter hereof. No promises of any kind have been made by Guaranteed Party or any third party to induce Guarantor to execute this Agreement. No course of dealing, course of performance or trade usage, and no parole evidence of any nature, shall be used to supplement or modify any terms of this Agreement.

16. **CERTAIN WAIVERS BY GUARANTOR**. GUARANTOR MAKES THE FOLLOWING WAIVERS WITH FULL KNOWLEDGE AND UNDERSTANDING THAT SUCH WAIVERS, IF NOT SO MADE, MIGHT OTHERWISE RESULT IN GUARANTOR BEING ABLE TO AVOID OR LIMIT GUARANTOR'S LIABILITY HEREUNDER EITHER IN WHOLE OR IN PART:

16.1. Guarantor waives:

16.1.1.   ANY AND ALL SURETYSHIP DEFENSES, WHETHER ARISING IN EQUITY, BY CONTRACT, STATUTE OR BY OPERATION OF LAW.

16.1.2.   Notice of (a) any adverse change in the financial condition of any Debtor, (b) any default in the performance of the Guaranteed Obligations; and (c) any other notice to which Guarantor might be entitled.

16.1.3.   Any defense or claim arising out of (a) the release of any collateral securing the Guaranteed Obligations or (b) any fact that may increase Guarantor's risk hereunder.

16.1.4. Any claim of usury.

16.1.5. Any other defense arising by reason of any disability or other defense (other than the defense that the Guaranteed Obligations have been fully paid) of Debtor including any defense arising from any statute of limitations.

16.1.6. Any defense based on the invalidity, irregularity, or unenforceability of all or any part of the Guaranteed Obligations or any other circumstance which might constitute a defense of a guarantor.

16.1.7. Any claim or defense based on (a) the validity, legality or enforceability in whole or in part of the Guaranteed Obligations, (b) any assignment, amendment, transfer, modification, renewal, waiver, compromise, addition or supplement relating to Guaranteed Obligations, (c) any setoff, counterclaim or any circumstances which might constitute a defense or discharge of Guarantor.

16.1.8. Any lack of power or authority of Debtor.

16.1.9. Any defense to payment hereunder resulting from Guaranteed Party's releasing the Debtor or any other obligor owing the Guaranteed Obligations from their obligation to pay the Guaranteed Obligations, as well as Guaranteed Party's failure to give Guarantor notice thereof.

16.1.10. All Guarantor's rights of reimbursement, indemnification, and contribution and any other rights and defenses that are or may become available to Guarantor.

16.1.11. All rights and defenses arising out of an election of remedies, such as a nonjudicial foreclosure with respect to security for a guaranteed obligation, has destroyed Guarantor's rights of subrogation and reimbursement against the Debtor.

17. **REVOCATION.**

17.1. Guarantor waives any right to revoke Guarantor's Guaranty Obligation hereunder as to future Guaranteed Obligations. Guarantor fully realizes and understands that, upon execution of this agreement, guarantor will not have any right to revoke this Agreement as to any future indebtedness and, thus, may have no control over Guarantor's ultimate responsibility for the guaranteed obligations.

17.2. If, contrary to the express intent of this agreement, any such revocation is effective notwithstanding the foregoing waiver, Guarantor agrees that: (a) no such revocation shall be effective until thirty days after written notice thereof has been received by Guaranteed Party; (b)

such revocation shall not apply to any Guaranteed Obligations in existence on such date (including any subsequent continuation, extension, or renewal thereof, (c) no such revocation shall apply to any Guaranteed Obligations created after such date to the extent made or created pursuant to a commitment of Guaranteed Party which is, or is believed in good faith by Guaranteed Party to be, in existence on the date of such revocation; (d) no payment by any other guarantor or Debtor, or from any other source, prior to the date of such revocation shall reduce the obligations of Guarantor hereunder; and (e) any payment by Debtor or from any source other than Guarantor, subsequent to the date of such revocation, shall first be applied to that portion of the Guaranteed Obligations, if any, as to which the revocation by Guarantor is effective (and which are not, therefore Guaranteed Obligations), and, to the extent so applied, shall not reduce the obligations of Guarantor hereunder.

18. **GOVERNING LAW**. This agreement, and the construction, interpretation, and enforcement hereof, and the rights of Guarantor and Guaranteed Party hereto and hereunder shall be determined under, governed by, and construed in accordance with the internal laws of the Chosen State.

19. **JURISDICTION AND VENUE**. Any suit, action or proceeding arising out of the subject matter hereof, or the interpretation, performance or breach of this Agreement, shall, if Guaranteed Party so elects, be instituted in any court sitting in the Chosen State (the "Acceptable Forums"). Each party agrees that the Acceptable Forums are convenient to it, and each party irrevocably submits to the jurisdiction of the Acceptable Forums, irrevocably agrees to be bound by any judgment rendered thereby in connection with this Agreement, and waives any and all objections to jurisdiction or venue that it may have under the laws of the Chosen State or otherwise in those courts in any such suit, action or proceeding. Should such proceeding be initiated in any other forum, Guarantor waives any right to oppose any motion or application made by Guaranteed Party as a consequence of such proceeding having been commenced in a forum other than an Acceptable Forum.

20. **WAIVER OF JURY TRIAL**.

THE PARTIES HERETO MUTUALLY HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT TO A TRIAL BY JURY IN RESPECT OF ANY CLAIM BASED HEREON, ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OTHER DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH OR ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS, WHETHER VERBAL OR WRITTEN, OR ACTIONS OF ANY PARTY, INCLUDING, WITHOUT LIMITATION, ANY COURSE OF CONDUCT, COURSE OF DEALINGS, STATEMENTS OR ACTIONS OF LENDER RELATING TO THE ADMINISTRATION OF THE TRANSACTION CONTEMPLATED HEREBY OR ENFORCEMENT OF THE DOCUMENTS EXECUTED IN CONNECTION HEREWITH, AND AGREE THAT NEITHER PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. EXCEPT AS PROHIBITED BY LAW, THE GUARANTOR HEREBY WAIVES ANY RIGHT SUCH PARTY MAY HAVE TO CLAIM OR RECOVER ANY LITIGATION ANY SPECIAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES OR ANY DAMAGES OTHER THAN OR IN ADDITION

TO, ACTUAL DAMAGES. THE GUARANTOR CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF GUARANTEED PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT GUARANTEED PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER. THIS WAIVER CONSTITUTES A MATERIAL INDUCEMENT FOR GUARANTEED PARTY TO ENTER INTO THIS AGREEMENT AND ENTER INTO THE TRANSACTION CONTEMPLATED HEREBY.

21. **WAIVER OF PREJUDGMENT HEARING.**

TO INDUCE GUARANTEED PARTY TO ENTER INTO THIS AGREEMENT, GUARANTOR AGREES THAT THE TRANSACTION CONTEMPLATED IN THIS AGREEMENT OR ANY OTHER DOCUMENTS CONTEMPLATED TO BE EXECUTED IN CONNECTION HEREWITH IS A COMMERCIAL TRANSACTION AND NOT A CONSUMER TRANSACTION, AND WAIVES ANY RIGHT TO A NOTICE AND HEARING UNDER ANY OTHER STATUTE OR STATUTES AFFECTING PREJUDGMENT REMEDIES AND AUTHORIZES GUARANTEED PARTY'S ATTORNEY TO ISSUE A WRIT FOR A PREJUDGMENT REMEDY WITHOUT COURT ORDER, PROVIDED THE COMPLAINT SHALL SET FORTH A COPY OF THIS WAIVER. GUARANTOR ACKNOWLEDGES AND STIPULATES THAT SUCH WAIVER AND AUTHORIZATION GRANTED ABOVE ARE MADE KNOWINGLY AND FREELY AND AFTER FULL CONSULTATION WITH COMPETENT COUNSEL. SPECIFICALLY, GUARANTOR RECOGNIZES AND UNDERSTANDS THAT THE EXERCISE OF GUARANTEED PARTY'S RIGHTS DESCRIBED ABOVE MAY RESULT IN THE ATTACHMENT OF OR LEVY AGAINST GUARANTOR'S PROPERTY, AND SUCH WRIT FOR A PREJUDGMENT REMEDY WILL NOT HAVE THE PRIOR WRITTEN APPROVAL OR SCRUTINY OF A COURT OF LAW OR OTHER JUDICIAL OFFICER NOR WILL GUARANTOR HAVE THE RIGHT TO ANY NOTICE OR PRIOR HEARING WHERE GUARANTOR MIGHT CONTEST SUCH A PROCEDURE. THE INTENT OF GUARANTOR IS TO GRANT TO GUARANTEED PARTY FOR GOOD AND VALUABLE CONSIDERATION THE RIGHT TO OBTAIN SUCH A PREJUDGMENT REMEDY AND TO ASSURE THAT ANY SUCH PREJUDGMENT REMEDY OBTAINED IS VALID AND CONSTITUTIONAL.

22. **ARBITRATION**. Notwithstanding anything to the contrary contained herein, any dispute arising out of or in connection with this Agreement shall, at Guaranteed Party's discretion, be settled exclusively and finally by arbitration conducted in the City of New York, New York, under the commercial arbitration rules of the American Arbitration Association (the "AAA"), such arbitration to apply the laws of the State of New York (without giving effect to conflicts of law principles). The arbitration shall be conducted by three (3) neutral arbitrators, each Party selecting one arbitrator within thirty (30) days after the date either Party receives a written demand for arbitration from the other; the two arbitrators shall then agree upon and appoint a third neutral arbitrator within thirty (30) days. Should a Party fail to appoint an arbitrator within

the initial thirty (30) day period, the arbitration shall be conducted by the sole arbitrator appointed; should both arbitrators fail to appoint the third arbitrator in the second thirty (30) day period, such arbitrator shall be appointed by the AAA. Nothing in this arbitration provision shall be deemed to (i) limit the applicability of any otherwise applicable statutes of limitation or repose and any waivers contained in this instrument, agreement or document; or (ii) be a waiver by the Guaranteed Party of the protection afforded to it by 12 U.S.C. sec. 91 or any substantially equivalent state law; or (iii) limit the right of the Guaranteed Party hereto (a) to exercise self-help remedies such as (but not limited to) setoff, or (b) to foreclose against any real or personal property collateral, or (c) to obtain from a court provisional or ancillary remedies such as (but not limited to) injunctive relief, writ of possession or the appointment of a receiver. The Guaranteed Party may exercise such self-help rights, foreclose upon such property, or obtain such provisional or ancillary remedies before, during or after the pendency of any arbitration proceeding brought pursuant to this instrument, agreement or document. Neither this exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies shall constitute a waiver of the right of any Party, including the claimant in any such action, to arbitrate the merits of the controversy or claim occasioning resort to such remedies.

Christopher Ivan Prescott submits to the jurisdiction of the courts or arbitration tribunals of the state of New York in connection with any dispute arising hereunder.

23. **SERVICE OF PROCESS**.

23.1. Guarantor agrees that Guaranteed Party may effect service of process upon Guarantor by regular mail at the address set forth herein or at such other address as may be reflected in the records of Guaranteed Party, or at the option of Guaranteed Party by service upon Guarantor's agent for the service of process.

IN WITNESS WHEREOF, Guarantor has executed this Agreement as of the date first written above.

GUARANTOR:

Christopher Ivan Prescott, individually

Home Address: 1014 Tullamore Pl
Alpharetta, GA 30022

Social Security #: XXX-XX-4103

State of        Georgia        )

County of     Fulton County )

On this _16_ of _October_ 2019, before me, _Anita McGee_, the undersigned officer, personally appeared _before me_, known to me (or satisfactorily proven) to be the person whose name, _Christopher Pusso_ subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

In Witness Whereof, I hereunto set my hand.

_____
Notary Public
My Commission

Anita S. McGee
NOTARY PUBLIC
Gwinnett County, GEORGIA
My Commission Expires 04/26/2023